NORTHERN INSURANCE COMPANY OF NEW YORK, appellee, v. RICHARD MILLER AND DOROTHY MILLER, appellants.

No. 51333.

(Reported in 129 N.W.2d 28)

JUNE 9, 1964.

William T. Evans, of Davenport, for appellants.

McDonald, McDonald & Carlin, of Davenport, for appellee.

PETERSON, J.—This is a replevin action. Plaintiff sued for possession of one 1962 Buick automobile on the basis of an Illi-

nois title certificate issued to plaintiff's assignor. Defendants alleged ownership and right of possession through an Iowa title certificate, after they had purchased the car for cash from a thief at Clinton, Iowa. The case was tried to the court on an agreed stipulation of facts. Trial court decided for plaintiff. Defendants appeal.

I. The 1962 Buick automobile involved in this case was assembled at the Buick plant in Flint, Michigan, and on November 24, 1961, was shipped to Northwest Buick Company at Chicago. On December 8, 1961, the automobile was sold to Donald Gaertner of Chicago. Gaertner was issued an Illinois motor vehicle certificate of title.

Sometime prior to December 19, 1961, the car was stolen. It was stolen by a member of a car-theft ring in Chicago. By use of the serial number and other identifying information, the car was registered at the auto license department at Birmingham, Alabama. It was registered under the fictitious name of Walter R. Jackson of Birmingham.

On March 5, 1962, the car was registered on the basis of the Alabama registration at the office of the Douglas County Treasurer, Omaha, Nebraska, under the name of William Allen. A Nebraska certificate of title was issued to him.

On June 9, 1962, the Nebraska title certificate was presented to the County Treasurer at Clinton, and the treasurer's office issued an Iowa title certificate to the automobile in the name of William Allen. The name William Allen was fictitious, the real name of the man having possession of the car and securing the certificate at Clinton was John James Eddy. He is now serving a sentence in the Illinois State Penitentiary at Joliet, Illinois. He was convicted on a burglary charge which, however, was unrelated to the present case.

After Allen secured the Iowa title certificate he inserted a classified advertisement in a Davenport, Iowa, newspaper, offering the automobile for sale and inviting replies by letter to a box number. Defendants were among those who replied by letter. It was displayed to defendants by the so-called William Allen who gave his address at that time as Clinton, Iowa.

On June 23, 1962, defendants purchased the automobile

from Allen for $2500 cash and received an assignment of the Iowa title certificate previously issued by the Clinton County Treasurer. On the same date defendants were issued an Iowa title to said automobile at Davenport by the Scott County Treasurer.

The Iowa title assigned to defendants was in all respects regular on its face and defendants relied on its validity in purchasing said automobile. Defendants had no notice that said automobile had been stolen and were innocent purchasers. The serial number of said automobile had not been altered. Defendants had possession of the automobile when this action was commenced.

At the time of the theft of the car plaintiff had insured same against theft. In May 1962 plaintiff paid Gaertner $3572.16 in settlement of his claim for theft of the automobile, and on May 23, 1962, received Gaertner's assignment of his Illinois title certificate.

October 4, 1962, plaintiff filed its replevin action in the Scott County District Court basing its claim as to right of possession on its assignment of the Illinois title certificate from Gaertner. In their answer defendants asserted their right of possession on the basis of their Iowa title certificate.

II. Appellants alleged the court committed two errors in connection with its decision. 1. In holding that section 321.45 (2), Code of Iowa 1962, does not by its terms have any application to the case at bar. 2. In finding that the certificate of title issued by the treasurer of Scott County, Iowa, to defendants had no value and effect.

In other words there are two legal questions to be considered by this court. a. Does section 321.45 (2) have any application to the case at bar? b. Can defendants acquire any right of ownership or possession through purchase of the Buick automobile from a thief?

III. The trial court held it was doubtful if section 321.45 (2) applies in this case at all, since that section provides that no title shall be obtained from the *owner* except in the way set out therein. The pertinent part of paragraph 2 of said section is as follows: "2. Except as provided in section 321.50 and

except for the purpose of section 321.493 no person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the *owner* thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or * * *." (Emphasis ours.)

While the trial court expresses doubt as to whether or not said section is applicable, we hold same is not applicable. Defendants received an Iowa certificate from a man who was not the owner of the car. He was a member of a Chicago car-theft ring and as a thief no right of ownership lodged in him. We will consider this feature of the case in our next division.

Defendants base their position as to ownership and right of possession of the Buick car upon two recent decisions rendered by this court. Varvaris v. Varvaris, 255 Iowa 800, 804, 124 N.W.2d 163, 165; Calhoun v. Farm Bureau Mutual Ins. Co., 255 Iowa 1375, 125 N.W.2d 121.

The two decisions do not sustain defendants' ownership of or right to possession of the Buick automobile. In the Varvaris case the estate of Steve Christ Varvaris was the owner of two Buick automobiles. They were registered in Linn County, Iowa, treasurer's office in the name of decedent and the estate held Iowa certificates as to such registration and ownership. Appellant was the widow of decedent and claims the right to the automobiles by virtue of a gift inter vivos. The trial court held in favor of the estate and we affirmed. In the opinion we stated: "Here the decedent could have transferred his right to and dominion over the two automobiles only by an assignment of the title certificates. The evidence is undisputed that no such assignment was made. * * * We hold that under the provisions of Code section 321.45 (2) a gift of the automobiles to defendant could not be made without an assignment of the title certificates."

In the Calhoun case, Harry L. Calhoun sued Farm Bureau Mutual Ins. Co., on a collision policy issued by defendant on a 1958 Pontiac automobile. In November 1960 plaintiff and a friend by the name of Rick Hudson traded automobiles. They took possession of each other's automobile, but transfer of the certificate of title was to be postponed until Mr. Hudson com-

pleted a loan in January 1961. On December 10, 1960, while Hudson was driving the 1958 Pontiac it was wrecked and became a total loss.

The trial court found there had been a completed sale of the Pontiac prior to the collision, and therefore, plaintiff was not insured by defendant's policy for damages to the car not owned by him. The trial court ruled the statute, Code section 321.45, requiring a certificate of title to an automobile, has no reference to a private transfer of title between buyer and seller. It dismissed plaintiff's petition.

Plaintiff contends the certificate of title to an automobile is conclusive evidence of ownership with exceptions as to damages and liens. He contends but for the exceptions which are stated in the statute, title remains in the registered owner until he assigns the certificate of title. The exceptions had no application as to the case. An article in 1953 issue of Drake University Law Journal, Professor Hudson stated:

"By action of the 55th General Assembly, Iowa has joined the states with comprehensive motor vehicle certificate of title laws. This has been accomplished by amendments to specific sections of Chapter 321, Code of Iowa (1950). The net result is to give Iowa a certificate of title law substantially like those of Ohio and Nebraska. It is assumed that the purpose of the change from the existing registration system to a certificate of title law was to prevent theft of motor vehicles. The explanation attached to H. F. 260, 55th General Assembly (a bill identical with S. F. 181), states that the bill is designed to benefit the motor vehicle owner. * * *

"However, the essential feature of the system is that the certificate of title issued for each motor vehicle and other vehicles subject to registration will be part of a chain of title, as certificates are assigned and new certificates issued. It is designed to show ownership interests and incumbrances on the title certificate."

We reversed the case holding as follows: "We conclude plaintiff as titleholder remained the owner of the 1958 Pontiac and entitled to recover under the 'collision clause' of his policy. To hold otherwise would nullify the statute."

We cannot reverse the case at bar on defendants' contention as to said statutory section and the two decisions of this court.

IV. As heretofore shown in Division I, Mr. John James Eddy using the fictitious name of William Allen had secured the Buick automobile involved in the instant case by theft.

Under the common law a thief could not become the owner of any article stolen by him. This court in joining with many decisions in other states held this to be true in the early Iowa case (1891) of Baehr v. Clark, 83 Iowa 313, 49 N.W. 840, 13 L. R. A. 717. Plaintiff was the owner of a jewelry store in Omaha, Nebraska. One day a man by the name of J. J. Barker appeared in plaintiff's place of business and said he had a friend who desired to make purchase of a diamond ring and stud. The price of the diamonds was fixed at $450. Mr. Barker stated he wanted to take the diamonds out and show them to the friend and would either return the diamonds to Mr. Baehr within an hour, or bring in the money. He did not return and later Mr. Baehr contacted him. At first Mr. Barker said he had been robbed of the two diamonds, but under sharp examination he finally admitted he had lost them in a gambling game in the gambling house of Mr. Carrigg in Council Bluffs. He admitted he had turned the two diamonds over to Mr. Carrigg to pay a gambling debt of $247.

When Mr. Baehr investigated the matter further he found Mr. Carrigg and Mr. Barker had disposed of the diamonds to Mr. A. A. Clark, the proprietor of a chattel loan office in Council Bluffs. Mr. Clark paid Mr. Carrigg $247 and paid Mr. Barker $28 or a total of $275.

Mr. Baehr sued Mr. Clark. The trial court held Mr. Barker secured the diamonds by fraud and misrepresentation which amounted to theft and did not become the owner. The decision of the trial court was affirmed by this court and in such decision at page 316 of 83 Iowa we stated: "* * * If one delivers property to another as a mere bailee, a purchaser from the bailee acquires no title, however innocent he may be. He has no more right to assert title to the property than if it had been stolen, and his purchase had been from the thief."

Counsel for neither party has been able to find and cite a

completely analogous automobile case in Iowa. Upon diligent search we find none. However, a similar question has been considered by courts in other states where the facts are the same as the facts of the case at bar.

Appellee leans heavily in its argument upon Ohio decisions. Not long ago two decisions were rendered supporting the position we are taking in the instant case. Such decisions were Ohio Casualty Insurance Co. v. Guterman, 97 Ohio App. 237, 125 N.E.2d 350, and Atlantic Finance Co. v. Fisher, 173 Ohio 387, 183 N.E.2d 135. Appellee not only cited said two decisions, but quoted at some length from them. It now appears that in a recent case of the Ohio Supreme Court announced on March 18, 1964, said two decisions with several other similar Ohio decisions were overruled. This appears in the Ohio case of Commercial Credit Corporation v. Pottmeyer, 176 Ohio 1, 197 N.E.2d 343. Briefly, would say in said case in January of 1961 Clarke Pontiac entered into a conditional sales agreement with Betty Williams providing for the payment of $3328.72, at $98.02 per month. The car was delivered to Betty and the purchase agreement was assigned by Clarke Pontiac to plaintiff. The agreement was duly recorded in West Virginia where the transaction was made. The West Virginia certificate of title was issued to Betty Williams, but the title certificate had a notation upon same as the West Virginia statutes provide of a notation of plaintiff's lien in the amount as above stated.

Later in January Betty Williams and two others applied for a certificate of title for the Pontiac car in the name of Hess Buick Company. On the application for said certificate of title they falsely stated that the Hess Buick Company had purchased the car direct from the manufacturer. However, Hess Buick Company received a certificate for the car which had no statement or no notation upon it showing plaintiff's lien. Hess Buick Company then had an auction sale of cars at Columbus, Ohio, and defendant purchased the automobile at said auction sale.

Plaintiff as the holder of the first certificate of title which was issued and as the holder of the lien on the car filed a replevin action against defendant, purchaser at the auction sale under the second certificate.

For some reason the Ohio Supreme Court reversed its position as evidenced by several previous decisions of the court. It decided defendant was entitled to the car as an innocent purchaser at the auction, although the Hess Buick Company had secured possession of the car under false representation as to its purchase. It is true the decision was rendered by a divided court of four to three and a very strong dissenting opinion was filed.

We cannot accept this recent opinion of the Ohio Supreme Court and cannot accept the present Ohio position with reference to cars secured from a thief or under misrepresentation.

The overwhelming weight of authority in the nation is contrary to this new Ohio position.

The Nebraska case of Allstate Insurance Co. v. Enzolera, 164 Neb. 38, 41, 81 N.W.2d 588, 591, is a typical case. The principles presented in said case are similar to the general principles of all the cases in all the states that have taken a position on the matter. The Nebraska case stated: "In the light of these facts and well-established principles of law neither the thief nor anyone taking through him took or could take any title to the automobile. Richter remained the owner with the right to recover possession of it wherever found, subject however to the right of a transferee to take it instead, in case Richter had transferred his title and interest. It should be said here that the defendant does not contend herein that the right of Richter to recover, if he had such right, has not passed to the plaintiff."

The Allstate Insurance Company case cited the previous Nebraska decision of State ex rel. Sorensen v. Nebraska State Savings Bank, 127 Neb. 262, 255 N.W.52, where the court stated: "Generally, a thief can acquire no title to stolen property, nor can title to personal property be acquired through another's larceny or theft."

Many states have held to the similar effect and text writers have so stated in well-known legal books. The texts and the decisions in eight of the states of our union are as follows: Restatement of the Law (Conflicts, sections 265 and 268); Goodrich Legal Volume (Conflicts, sections 157 and 158); also Beale (Conflicts, sections 50.2 and 266.3); Mercantile Acceptance Co. v. Frank (1928), 203 Cal. 483, 265 P. 190, 57 A. L. R. 696;

Federico v. Universal C. I. T. Credit Corp. (1959), 140 Colo. 145, 343 P.2d 830; Vincent v. General Motors Acceptance Corp. (Fla., 1954), 75 So.2d 778; General Motors Acceptance Corp. v. Nuss (1940), 195 La. 209, 196 So. 323; Metro-Plan, Inc., v. Kotcher-Turner, Inc. (1941), 296 Mich. 400, 296 N.W. 304; Bank of Atlanta v. Fretz (1950), 148 Tex. 551, 560, 226 S.W.2d 843, 849; Swartz v. White, 80 Utah 150, 13 P.2d 643; Gossett v. Williams, Tex. Civ. App., 288 S.W. 594; Port Finance Co. v. Ber, La. App., 45 So.2d 404; Canales v. Earl, 168 N. Y. S. 726.

█ Since defendants purchased the Buick automobile from a thief and secured their Iowa certificate title through said thief they are not entitled to ownership or possession of the automobile.

The holding of a certificate of title issued by the county treasurer of any county upon the basis of a stolen car is a definite exception to the general provisions as to title certificate law as heretofore announced by this court.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.