HARDWARE MUTUAL CASUALTY CO., APPELLEE, *v.* GALL, APPELLANT.

REPUBLIC-FRANKLIN INS. CO., APPELLANT, *v.* CASHNER BROS. ET AL., APPELLEES.

[Cite as Hardware Mutual Casualty Co. v. Gall, 15 Ohio St. 2d 261.]

(Nos. 41282 and 41366—Decided September 18, 1968.)

*Messrs. Zimmerman & Zimmerman* and *Mr. Charles B. Zimmerman, Jr.,* for appellee in case No. 41282.

*Mr. John E. Gould* and *Mr. David W. Carter,* for appellant in case No. 41282.

*Mr. Harry W. Schmuck,* for appellant in case No. 41366.

*Mr. Maurice W. Wendling, Mr. Richard O. Kuhn* and *Mr. Thomas W. Sharatt,* for appellees in case No. 41366.

SCHNEIDER, J. Before we confront once more the principal issue at bar, we apparently must again dispel the erroneous notion that whoever first obtains an apparently valid Ohio certificate of title will be entitled to retain possession of the automobile regardless of whether he is the real owner or a bona fide purchaser without notice, whose title derives from a thief. See *Buckeye Union Casualty Co. v. Nichols,* 6 Ohio App. 2d 36. The principal authority for this erroneous proposition is *Commercial Credit Corp. v. Pottmeyer, supra* (176 Ohio St. 1), where four members of the court agreed to the following syllabus (paragraph three):

"One who claims a right, title or interest in or to a motor vehicle but whose claim is not noted upon any Ohio certificate of title cannot prevail in an action in replevin against a purchaser in Ohio of such motor vehicle, who acquired possession in Ohio of such vehicle together with an apparently valid Ohio certificate of title therefor in good faith and without notice of any right, title or interest in such vehicle not set forth in his certificate of title."

*Pottmeyer* does not, and cannot under any circumstances, sanction such a race to the registrar awarding ownership on a "first come, first served" basis. *State, ex rel. Hertz Corp., v. Rice,* 14 Ohio St. 2d 34, and *Gibson* v. *Bolner,* 165 Ohio St. 357. The rationale of *Hertz* applies equally as well to the instant cases. See 14 Ohio St. 2d pages 37 and 38.

Thus, neither plaintiff had any need (nor indeed, any right) to acquire an Ohio certificate of title in pursuit of its action in this state. Paragraph three of the syllabus of *Pottmeyer* is hereby overruled. The Michigan certificates of title were sufficient to establish their claims of ownership in Ohio and to test their rights as against bona fide Ohio purchasers without notice.[1]

In the only other case where that question has been squarely before this court, it was held:

---

[1] It will be noted here that in neither of the cases now before us has the bona fide purchaser raised any question of the owner's negligence or claimed that the latter's conduct with respect to the automobile while in his possession should estop him from asserting his rights.

"Under the provisions of the Ohio Certificate of Motor Vehicle Title Act, a thief can not convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, although the certificate of title used in the purported transfer appears valid on its face." *Atlantic Finance Co.* v. *Fisher,* 173 Ohio St. 387, paragraph three of the syllabus.

In *Commercial Credit Corp.* v. *Pottmeyer, supra* (176 Ohio St. 1), a case in which the question of theft was not before the court, four members of the court agreed in the syllabus (paragraph four) that "[a]n Ohio bona fide purchaser of a motor vehicle may be protected whether his Ohio certificate of title resulted from fraudulent representations of a swindler or a thief."

The disposition of these cases involves a re-examination of *Pottmeyer* and the extent of its applicability to the instant cases.

In that case, a purchaser of an automobile entered into a conditional sales agreement providing for the payment of $3,528.72, at $98.02 per month. The purchaser obtained two West Virginia certificates of title. No liens were noted on the first, the application for the certificate having been falsified. The second certificate bore a notation of the lien in the correct amount. Plaintiff, the seller's assignee, sought to replevin the automobile from defendant, a bona fide purchaser for value without notice, who had obtained an Ohio certificate of title which did not show the lien. Under the rule followed by a majority of jurisdictions, Pottmeyer would have been deprived of his automobile.

"Since the basis of the rule protecting an innocent purchaser of a motor vehicle who has relied upon his seller's possession of a certificate of title showing no liens or encumbrances is the fault of the actual owner or mortgagee in permitting the seller to have such possession, it follows that the rule will not be applied where the original owner or mortgagor is not at fault. And it is generally held that there is no fault, and therefore no estoppel, where the actual owner or mortgagor has complied with the local laws for the recordation of his ownership or lien, and the person to whom possession of the automobile has been delivered thereafter removes it to another jurisdiction and

fraudulently obtains a lien-free certificate of title." 18 A.L.R. 2d 813, 823.

However, this court, in upholding the rights of the bona fide purchaser for value without notice as against those of the lien claimant, said in *Pottmeyer, supra* (176 Ohio St. 1), at page 4, that "the clear words of the Ohio Certificate of Title Act had in effect imparted negotiability in Ohio to an automobile in the possession of one holding an Ohio certificate of title showing him as owner." This rationale would apply equally to theft cases. A majority of this court, however, cannot now agree with it nor find the authority or logic upon which it is based.

The reference in *Pottmeyer* to the negotiability of bills of lading, warehouse receipts and other documents of title is inapplicable to the Ohio Certificate of Motor Vehicle Title Act. The form of certificate prescribed for use by Section 4505.07, Revised Code, contains no words of negotiability.

Moreover, Section 1307.04, Revised Code (UCC 7-104), provides:

"(A) A warehouse receipt, bill of lading or other document of title is negotiable:

"(1) if by its terms the goods are to be delivered to bearer or to the order of a named person; or

"(2) where recognized in overseas trade, if it runs to a named person or assigns

"(B) *Any other document is non-negotiable.* A bill of lading in which it is stated that the goods are consigned to a named person is not made negotiable by a provision that the goods are to be delivered only against a written order signed by the same or another named person." (Emphasis supplied.)

And, Section 1307.30, Revised Code (UCC 7-502), cited in *Pottmeyer*, refers only to rights acquired by due negotiation and applies only to a "negotiable document" which must meet the requisites of Section 1307.04, Revised Code, *supra*.

But, the final answer to *Pottmeyer* is that we are con-

cerned here not with a theft of the certificate, but of the vehicle which it represents. That case, therefore, must be limited to its facts. When one of two innocent persons must suffer from the fraud of a third, the one who made it possible for the fraud to be perpetrated must bear the loss. While the majority of jurisdictions require the entrustment of a certificate of title or other indicia of ownership to a conditional sales vendee as well as entrustment of the automobile, itself, Ohio has found mere possession of the automobile sufficient indicia of ownership in a conditional sale vendee. *Kelley Kar Co.* v. *Finkler,* 155 Ohio St. 541.

That part of *Pottmeyer* which expressly overruled *Atlantic Finance Co.* v. *Fisher, supra,* has been the subject of varying interpretations among our Courts of Appeals, as evidenced by these instant cases and *Buckeye Union Casualty Co.* v. *Nichols, supra* (6 Ohio App. 2d 36). It has also been the subject of vigorous comment in other states. See, for example, *Northern Ins. Co. of New York* v. *Miller,* 256 Iowa 764, 771, 129 N. W. 2d 28[2]; and 18 A. L. R. 2d 839, where the following appears:

"In the relatively few cases involving attempted sales of motor vehicles by persons who had obtained possession of the vehicles and accompanying documents of title by outright theft the rights of the true owner of the vehicle have been protected as against subsequent purchasers."

Section 4505.17, Revised Code, establishes the pro-

---

[2]The Iowa court cited as authority:

"Restatement of the Law (Conflicts, Sections 265 and 268); Goodrich Legal Volume (Conflicts, Sections 157 and 158); also Beale (Conflicts, Sections 50.2 and 266.3); *Mercantile Acceptance Co.* v. *Frank* (1928), 203 Cal. 483, 265 P. 190, 57 A. L. R. 696; *Federico* v. *Universal C. I. T. Credit Corp.* (1959), 140 Colo. 145, 343 P. 2d 830; *Vincent* v. *General Motors Acceptance Corp.* (Fla. 1954), 75 So. 2d 778; *General Motors Acceptance Corp.* v. *Nuss* (1940), 195 La. 209, 196 So. 323; *Metro-Plan, Inc.,* v. *Kotcher-Turner, Inc.* (1941), 296 Mich. 400, 296 N. W. 304; *Bank of Atlanta* v. *Fretz* (1950), 148 Tex. 551, 560, 226 S. W. 2d 843, 849; *Swartz* v. *White,* 80 Utah 150, 13 P. 2d 643; *Gossett* v. *Williams* (Tex. Civ. App.), 288 S. W. 594; *Port Finance Co.* v. *Ber* (La. App.), 45 So. 2d 404; *Canales* v. *Earl.* 168 N. Y. S. 726."

cedure to be followed in the event of a motor vehicle theft. Law enforcement officers must immediately inform the Registrar of Motor Vehicles concerning the theft. The registrar must make a record thereof, filed in the numerical order of the manufacturer's serial number or motor number. Section 4505.17, Revised Code, then provides:

"In the event of the receipt from any clerk of the court of common pleas of a copy of a certificate of title to such motor vehicle, the registrar shall immediately notify the rightful owner thereof and the clerk who issued such certificate of title, and if, upon investigation, it appears that such certificate of title was improperly issued, the registrar shall immediately cancel same."

Because of our disposition of these cases, we need not make any distinction between a chain of title originating in a thief, as evidenced by a certificate of title bearing the correct manufacturer's serial number, and one evidenced by a certificate of title bearing an altered manufacturer's serial number. A thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, notwithstanding the correctness of the manufacturer's serial number appearing on an apparently valid certificate of title, absent any question of estoppel arising from an act of the owner.

*In case No. 41282, judgment affirmed.*
*In case No. 41366, judgment reversed.*

STRAUB, MATTHIAS, HERBERT and BROWN, JJ., concur.

TAFT, C. J., and O'NEILL, J., concur in paragraphs one and two of the syllabus but dissent from paragraph three of the syllabus and from the judgment.

STRAUB, J., of the Sixth Appellate District, sitting for ZIMMERMAN, J.

TAFT, C. J., dissenting. It seems to me that the General Assembly has again affirmatively approved the inter-

pretation of the Certificate of Title Act made by this court in *Kelley Kar Co.* v. *Finkler* (1951), 155 Ohio St. 541, 99 N. E. 2d 665, and in *Commercial Credit Corp.* v. *Pottmeyer* (1964), 176 Ohio St. 1, 197 N. E. 2d 343, *i. e.*, that one who purchases and acquires possession in Ohio of a motor vehicle together with an apparently valid Ohio certificate of title therefor in good faith and without notice of any right, title or interest in such vehicle not set forth in his certificate of title, is entitled to retain possession of that vehicle as against someone else who claims a right, title or interest in or to that vehicle.

In the opinion in the *Pottmeyer case*, at page five, we pointed out that the General Assembly had affirmatively approved that interpretation, and we then again "asked the General Assembly to change the law if it disagreed with the interpretation which we had given to it."

Subsequent amendments to the Certificate of Title Act indicate an affirmative approval by the General Assembly of the interpretations made of that act by this court in the *Kelley Kar* and *Pottmeyer cases.*

In opposing the protection, provided by those interpretations for Ohio bona fide purchasers of motor vehicles, the dissenting opinion in *Pottmeyer* had contended that such interpretations would make Ohio "a dumping ground for converted motor vehicles."

After the occurrences involved in each of the instant cases and about one and a half years after the *Pottmeyer* decision and apparently to fortify provisions of the Certificate of Title Act, which I referred to in the majority opinion in the *Pottmeyer case*, at page six *et seq.*, and which would tend to prevent making Ohio such a "dumping ground," the General Assembly enacted Section 4505.-061, which reads so far as pertinent:

"If the application for a certificate of title refers to a motor vehicle last previously registered in another state, the application shall be accompanied by a physical inspection certificate issued by the Department of Highway Safety verifying the make, body type, model, and manu-

facturer's serial number of the motor vehicle for which the certificate of title is desired."

Such an inspection almost always would disclose whether the car had been stolen before being brought into Ohio and would prevent issuance of any Ohio certificate of title for a motor vehicle stolen outside of Ohio. Thus, any alteration in its serial number would probably be discovered and lead to determination of the "manufacturer's original serial number." Also, Section 4505.17, Revised Code, requires the Registrar of Motor Vehicles to have a record of every car reported as stolen. The Registrar is the administrator of the Bureau of Motor Vehicles, which is in the Department of Highway Safety (Section 4501.-02, Revised Code), so that there should be little chance in the future of issuance of any physical inspection certificate by that department for a vehicle stolen outside Ohio.