STATE FARM MUTUAL AUTOMOBILE INS. CO., APPELLANT,
*v.* VALENTINE, APPELLEE.

[Cite as State Farm Mutual Ins. Co. v. Valentine (1971), 29 Ohio App. 2d 174.]

(No. 71-142—Decided September 14, 1971.)

*Messrs. Hamilton, Kramer, Myers & Summers* and *Mr. Joseph R. Hague,* for appellant.
*Mr. Howard J. Gallant,* for appellee.

TROOP, P. J. This appeal is from a judgment of the Franklin County Municipal Court, entered April 13, 1971, on questions of law. The entry followed and reflected the sustaining of the defendant's motion for summary judgment and the dismissal of a similar motion made by the plaintiff. The single assignment of error claimed by the appellant in support of its appeal is that the trial court erred in the sustaining and the overruling of the motions for summary judgment as noted.

Appellant, State Farm, was the plaintiff in the trial court in an action in replevin. An affidavit is attached to the complaint in which the plaintiff says that it is the owner of a certain Impala Chevrolet by virtue of a certificate of title issued by the state of Illinois. In answer to the complaint in replevin, the defendant, Paul Eugene Valentine, simply "denies each and every allegation therein contained." Plaintiff, in the affidavit attached to its complaint, says, however, that the defendant claims ownership by virtue of an Ohio certificate of title "issued upon a fake and fraudulent Illinois certificate of title procured by the thief." Such certificate of title is attached to the memorandum of the defendant in support of his motion for summary judgment.

No trial was had in this case, the procedure follow-

ed being that prescribed in Civil Rule 36. The plaintiff made a request for admissions consisting of 12 specific statements of fact basic to the case. The second portion of the demand recited that the Supreme Court decision in *Hardware Mutual Casualty Co.* v. *Gall* (1968), 15 Ohio St. 2d 261, "is determinative of all of the issues in this case." In his answer to the demand of the plaintiff, the defendant said that the 12 statements of fact are true and agreed that the decision in *Gall* is determative of all the issues in the case.

In connection with the judgment entered, the trial court rendered, and filed, its "decision," in which it is said:

"The parties agree that a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice."

And then the court observes that the parties differ only as to whether the "agreed facts" constitute a theft and whether there is a question of estoppel arising from an act of the owner.

The 12 basic facts set out in plaintiff's demand seem difficult to summarize, but the most pertinent need to be noted. Plaintiff's insured, Olga Ziesemer, owned the Impala and delivered it and a certificate of title endorsed in blank to one "Will T. Hyde," who gave her, at her Illinois home, a cashier's check, on the Security First National Bank of Los Angeles, in the sum of $2,300. The check turned out to be a forged, counterfeited check. Mrs. Ziesemer made claim to her insurer, the plaintiff, under the "theft" coverage of her policy, and was paid the sum of $2,300.

Defendant, Valentine, paid "Wayne M. Mott" $1,900 for the Impala at a motel in Columbus, Ohio, and received therefor an Illinois certificate of title, which he then translated into an Ohio certificate of title under which he claimed ownership. It developed that "Hyde" and "Mott" were one "Winfield Nairn MacQueen," who was apprehended for a series of automobile transactions, interstate in character, and who, upon arraignment, pleaded guilty. After imposition of sentence MacQueen committed suicide in his jail cell.

It appears that State Farm recovered a part of the amount paid to its insured from MacQueen's small estate, which fact need not confuse this discussion at this point.

Appellee, Valentine, takes the position that MacQueen was not a thief under Ohio law. The trial court must have given thought to that factor when observing that the owner, Ziesemer, voluntarily relinquished possession of her automobile. For approximately forty years under Ohio law the position taken by appellee would have undoubtedly been correct, but a decision by the Supreme Court in *Munchick* v. *Fidelity & Casualty Co.* (1965), 2 Ohio St. 2d 303, seems to provide an answer to the question posed in this appeal. The rule announced in paragraph two of the syllabus of *Munchick* is as follows:

"Where the term, 'theft,' is used but not defined in an insurance contract drafted by the insurer, it includes any wrongful deprivation of the property of another without claim or color of right."

At page 305, the court elaborates, saying:

"Although the term, 'theft,' is often used in a popular sense to mean larceny, the terms are not synonymous. Theft is a broader term than larceny and includes other forms of wrongful deprivation of the property of another."

Specifically, the court overruled its previous decision in *Royal Ins. Co.* v. *Jack* (1925), 113 Ohio St. 153.

The act of MacQueen (Hyde) in securing the Impala by the use of a forged, counterfeited check, could well qualify as larceny by trick under our Ohio statute, but the Supreme Court says that it is also a "theft," as to insurance coverage, if an insurer fails to carefully define the term in the provisions contained in its policy. A "theft," as it seems in the instant case, would make MacQueen (Mott) a thief. It is clearly a "theft" as to the coverage afforded Mrs. Ziesemer.

Counsel for the parties to this cause agreed that the decision in *Hardware Mutual Casualty Co.* v. *Gall, supra* (15 Ohio St. 2d 261), represents the law of Ohio and "is determinative of all of the issues in the case." The Supreme Court held, in paragraph one of the syllabus of *Hardware*

*Mutual,* R. C. 4505.01 *et seq.* "does not abrogate the rule that the law of the state in which a chattel is located at the time of the transaction in question determines the creation and transfer of interests in the chattel." It seems clear that the law of Ohio, statutory and decision law, is applicable to the sale of the Impala by "Mott," or MacQueen, to the defendant, Valentine. This, of course, assumes such to be "the transaction in question."

Paragraph three of the syllabus is also important to this discussion. It says that under Ohio certificate of title law, "absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, although the certificate of title used in the purported transfer appears valid on its face."

The relatively new approach to the trial of this cause, as well as other facets of the case, seem to have presented as many problems to the trial court as are presented to confuse this Court of Appeals. The decision of the trial court indicates that the court, as well as the parties, looked to the decision in *Hardware Mutual, supra.* Examination of the "decision" of the trial court indicates that the court found Mrs. Ziesemer's act of endorsing a certificate of title in blank as creating estoppel. It appears clear also that the trial court found Valentine as without notice of any irregularity. It is noted by the court that some difficulty was experienced in understanding how the plaintiff got a certificate of title to the Impala from the state of Illinois when "Mott" negotiated a title from the same state, issued in his name, to the defendant. In conclusion, the trial court said that the plaintiff "is charged with both the errors of the previous owner and its own," and that, said the court, was enough to disqualify it from recovery under the *Hardware Mutual* decision.

It must be emphasized, first, that this is an action in replevin and that the issues are tried upon 12 agreed, or stipulated, facts. There is no other evidence that could be considered by the trial court.

The trial court was puzzled because the owner in

this case "voluntarily relinquished" her certificate of title. As to her policy coverage, the decision in *Munchick, supra,* leaves no doubt. Her loss of an automobile was by way of "theft," and the carrier properly paid for the loss.

From there on the problem becomes more complex. First, because we are not concerned with recovery under an insurance policy, and second, because *Hardware Mutual* is a review of two cases and in both instances there was a "theft" of an automobile in the generally accepted sense. Neither thief "stole" a title certificate. In this case pattern, therefore, the question of an estoppel becomes extremely important and raises the question whether the definition of "theft," as held in *Munchick,* is applicable in this case. It is possible that *Hardware Mutual* might not have been quite so dogmatic in holding that "a thief cannot convey valid title" as a broad, generally applicable rule had this fact pattern been presented to it.

This is an action in replevin. Plaintiff alleges in its complaint that it "owns" the Impala, and prays for the property and damages in the amount of $2,300, with interest and costs. Ownership by the plaintiff is denied by the defendant in his answering general denial. Furthermore, there are only 12 basic facts presented to the trial court by way of agreement, and ownership of the vehicle is not among those stipulations. The only suggestion of ownership in the plaintiff comes from a Xerox copy of an Illinois certificate of title attached to the affidavit of plaintiff's counsel offered in support of the complaint.

Ohio decision law makes it clear that the ownership of an automobile can only be evidenced by the production of a valid certificate of title. This requirement can only be relieved by stipulation of ownership.

Replevin will not lie unless ownership of, or an interest in, the chattel sought to be recovered is established. (47 Ohio Jurisprudence 2d 350, Section 1, *et seq.*)

The trial court, in its decision, poses an intriguing problem, to say the least. Speaking of the plaintiff, it reads as follows:

"* * * The court has difficulty understanding the

procedure of their getting a title issued to them by the state of Illinois on December 8, 1969, when both the plaintiff and the previous owner knew that the title had been previously endorsed and given to someone else which resulted in a transfer in Ohio on an earlier date, namely, October 6, 1969, two months earlier."

And the court then compounds the confusion by adding the following:

"* * * If plaintiff owned the vehicle in question, by what authority do they make claim for the full value of the vehicle from the estate of MacQueen? * * *"

Again, it is noted that there is no "evidence" before the trial court indicating recovery on a claim filed against the estate of the deceased MacQueen. The information came to the attention of the trial court by way of plaintiff's "cross-motion for summary judgment." At page 2, counsel calls attention to facts stipulated, set out in paragraphs 10, 11, and 12 of plaintiff's demand, and then goes on to say that plaintiff "made claim" for its $2,300 theft loss against the estate of MacQueen and "was allowed the sum of $1,100 to apply upon its total claim."

This voluntary admission must be presumed to be fact. The meager recital in the motion leaves the basis for the claim obscure, but it suggests that the basis could have been conversion of some sort. In any event, MacQueen's estate paid for and owns $1,100 worth of the Impala purchased by Valentine. Plaintiff seeks, in replevin, to gain possession of what it "owns," there being claim asserted to the whole automobile and not an interest therein. How plaintiff secured the Illinois certificate of title to the Impala must remain a mystery.

It would be convenient if it were possible to apply the longstanding equitable doctrine that when a loss must fall on one of two innocent parties, the one whose conduct brought about the situation should suffer. The trial court seems to lean toward that doctrine when holding that Mrs. Ziesemer started the chain of events by handing over her certificate of title endorsed in blank. That court also says

"that prudence might have required him [defendant Valentine] to make more careful scrutiny of the situation because of the manner in which the vehicle was sold to him."

These observations suggest not two innocent persons but two persons at fault, in which case a court is obliged to leave them as it finds them.

The out-of-the-ordinary facets of this case, factual and procedural, create confusion such as to defeat the emergence of any clear basis for the application of a given rule of law. Surveying the whole picture presented, however, some conclusions seem inevitable.

The action in replevin requires proof of ownership of, or proof of an interest in, the chattel which is the object of the suit. There is no acceptable proof of ownership in the instant case and there is no stipulation as to either ownership or interest.

The admissions of the plaintiff indicate that it can have no more than an ownership of an interest, if in fact it be that.

If MacQueen was not a "thief," then he could pass a valid title to Valentine. And, even if he was a thief, as to the insurance coverage involved, his estate satisfied a portion of the claim against him for wrongful conversion, which appears to nullify the "thief" concept even for insurance purposes.

Assuming that the trial court inferred, from the facts before it, fault on the part of Mrs. Ziesemer and defendant Valentine, then it properly left the situation as it found it.

The foregoing observations and comments lead to the most troublesome question presented to this reviewing court. Action was started by a complaint in replevin which was met by a general denial. There was no hearing in the accepted sense of the term, but trial was had following a demand and admissions procedure possible under Civil Rule 36. The rule, paragraph (B), does provide that admitted matter is conclusively established, except if the court makes a further order concerning it.

And then comes the troublesome question which becomes urgent when both parties asked for a summary judgment and the trial court sustained one motion for summary judgment and denied the other. At that point, Civil Rule 56 takes over. In no sense does Rule 36 supersede Rule 56. The basic rules, to which we are already accustomed, determining when summary judgment lies, remain controlling. Civil Rule 56 specifies the kind and method of support required to support summary judgment. These requirements seem not to have been met in the instant case. For example, the language of paragraph (E) makes it doubtful if affidavits attached to pleadings, the only kind filed herein, are sufficient to support a motion for summary judgment. Certainly the basic concept in summary judgment proceedings remains. A summary judgment shall not be rendered unless it appears from the evidence, or stipulations, "and only therefrom," that reasonable minds can come to but one conclusion, adverse to the party against whom the motion is made.

As noted, the fundamental matter of "ownership" is in doubt, no proof in compliance with Ohio rules having been offered. Reasonable minds could differ as to estoppel as the trial court indicated.

The trial court erred in rendering summary judgment in this case. For that reason, and in the light of the observations made by this court, the judgment of the trial court is set aside and the cause is remanded for further proceedings according to law and in conformity with this decision.

*Judgment reversed.*

STRAUSBAUGH and REILLY, JJ., concur.