OPINION JUDGMENT ENTRY
 STATEMENT OF THE FACTS AND CASE
{¶ 1} The facts indicate that RR Visual, Inc. ("RR") was the owner of a Hummer motor vehicle which it acquired for business purposes in 1999. In early 2001, it placed an advertisement in a trade publication to sell such vehicle.
{¶ 2} One Kelly Davis, calling herself Tameka Lewis, contacted RR as to buying the Hummer.
{¶ 3} She made arrangements with RR whereby the latter would bring the Hummer to Detroit and that she would provide a cashier's check for the $45,000 purchase price.
{¶ 4} A delay in her arriving to complete the sale occurred causing some concern to RR, but she did arrive, provided the check and received the vehicle.
{¶ 5} The check was counterfeit and various law enforcement agencies were notified. The vehicle identification number ("VIN number") was entered into the National Computer database ("NCIC") as a stolen vehicle and into that maintained by the Michigan Secretary of State.
{¶ 6} As Tameka Lewis, Davis obtained a Michigan certificate of title and subsequently a duplicate thereof. On the same day, February 27, 2001, that the duplicate was issued, the Michigan Secretary of State issued a stop action order as to transfer of such vehicle.
{¶ 7} On the next day, Davis sold the Hummer to L.A. Trading Co. ("L.A."), a licensed used car dealership in Detroit for $12,000.
{¶ 8} On March 1, 2001, L.A. auctioned the vehicle through Manheim's Metro Detroit Auction, Inc. ("Manheim"). Loudon Motor's Inc. ("Loudon"), a licensed Ohio dealership was the purchaser at $23,000. Loudon then obtained an Ohio certificate of title.
{¶ 9} On March 9, 2001, Loudon sold the Hummer to Richard and Jan Bernsee, Florida residents, who also obtained an Ohio certificate or title.
{¶ 10} Loudon was notified by the United States Secret Service as to the Hummer being a stolen vehicle on April 23, 2001.
{¶ 11} Gregory Loudon, President of Loudon, did not inform such federal agency of the location of the Hummer, but instead repurchased it from the Bernsees and returned it to Ohio. He then obtained a duplicate Ohio title and transferred the title to Loudon Motors, Inc.
{¶ 12} The Bernsees had been unable to obtain a Florida title to the Hummer while in their possession due to its identification as stolen.
{¶ 13} Davis was prosecuted in Federal court and executed a plea as to her actions.
{¶ 14} Loudon then commenced suit against RR and United Fire 
Casualty Company ("United"), the carrier for RR, which filed cross claims for declaratory judgment and damages. L.A. and Manheim became involved in the action through contractual terms including indemnity language and they also cross-claimed.
{¶ 15} A summary judgment motion, while initially denied, after reconsideration, was granted to Loudon with the motions of RR and United denied. The motion of Manheim was not addressed nor was Loudon's claim against Manheim.
{¶ 16} From the court's ruling, United and RR raise four assignments of error:
 ASSIGNMENTS OF ERROR
{¶ 17} "I. The trial court committed reversible error when it applied the uniform commercial code to determine ownership to the hummer, instead of the ohio certificate of title act.
{¶ 18} "II. The trial court committed reversible error in declaring that the hummer was not stolen and davis did not commit theft.
{¶ 19} "III. The trial court erred by improperly construing certain evidence against RR and united on disputed issues of fact.
{¶ 20} "IV. The trial court committed reversible error in finding that loudon did not violate o.r.c. § 4505.19. When he obtained ohio certificates of title to the hummer of May 17, 2001."
{¶ 21} Manheim, as cross-appellant, raised one assignment oferror:
{¶ 22} "V. The trial court erred by not granting Manheim's Metro Detroit Auto Auction, Inc.'s motion for summary judgment for indemnification against defendant L.A. Trading Co."
 SUMMARY JUDGMENT STANDARD
{¶ 23} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
{¶ 24} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
{¶ 25} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
 CROSS-APPEAL
{¶ 26} We shall first address the cross-appeal of Manheim. The trial court did not specifically address such cross-appellants' motion for summary judgment. However, the failure to rule on the motion will implicity be considered a denial. Hawthorne v.Migoni (2004), 5th Dist. App. No. 2003AP070054, 2004-Ohio-378. Thus, cross-appellants' claims remain pending.
{¶ 27} A denial of a motion for summary judgment does not determine the action and prevent a judgment. Thus, such a denial is not a final order pursuant to R.C. 2505.02. Celebrezze v.Netzley (1990), 51 Ohio St.3d 89, 90.
{¶ 28} Therefore, such cross-appeal is not ripe for appeal and, while such issues as to indemnification and damages, if any, remain unresolved, such issues do not, of necessity, relate to the determination of vehicle ownership involved in the remaining assignments of error.
{¶ 29} Therefore, for these reasons, the cross-appeal of Manheim is rejected and these issues are remanded for subsequent determination.
 APPELLANT I, II, III, IV
{¶ 30} The appeals in each of Appellant's four Assignments of Error are being addressed simultaneously as the underlying facts affect all of the issues contained in both appeals.
{¶ 31} The stipulation referenced in the reconsidered entry states that Ohio law controls even though the initial events occurred in Michigan. The affidavit of David Faiver, a Michigan enforcement technician, states that, due to his "stop action" entered into the data base of the Michigan Secretary of State on February 27, the title applied for and issued on the succeeding day was an invalid title.
{¶ 32} Whether such statement is a correct conclusion under Michigan law is not before us, but will be accepted at face value due to the stipulation.
{¶ 33} The statutes considered by the court are R.C.1302.44(B), R.C. 4505.04(A), R.C. 4505.19 and R.C. 2913.01.
{¶ 34} R.C. 1302.44(B) states:
{¶ 35} "(B) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business."
{¶ 36} R.C. 4505.19 states:
{¶ 37} "(A) No person shall do any of the following:
{¶ 38} "(1) Procure or attempt to procure a certificate of title or a salvage certificate of title to a motor vehicle, or pass or attempt to pass a certificate of title, a salvage certificate of title, or any assignment of a certificate of title or salvage certificate of title to a motor vehicle, or in any other manner gain or attempt to gain ownership to a motor vehicle, knowing or having reason to believe that the motor vehicle or any part of the motor vehicle has been acquired through commission of a theft offense as defined in section2913.01 of the Revised Code;
{¶ 39} "(2) Purport to sell or transfer a motor vehicle without delivering to the purchaser or transferee of it a certificate of title, a salvage certificate of title, or a manufacturer's or importer's certificate to it, assigned to the purchaser as provided for in this chapter, except as otherwise provided in this chapter.
{¶ 40} "(3) With intent to defraud, possess, sell, offer to sell, counterfeit, or supply a blank, forged, fictitious, counterfeit, stolen, or fraudulently or unlawfully obtained certificate of title, registration, bill of sale, or other instruments of ownership of a motor vehicle, or conspire to do any of the foregoing;
{¶ 41} "(4) Knowingly obtain goods, services, credit, or money by means of an invalid, fictitious, forged, counterfeit, stolen, or unlawfully obtained original or duplicate certificate of title, registration, bill of sale, or other instrument of ownership of a motor vehicle;
{¶ 42} "(5) Knowingly obtain goods, services, credit, or money by means of a certificate of title to a motor vehicle, which is required to be surrendered to the registrar of motor vehicles or the clerk of the court of common pleas as provided in this chapter."
{¶ 43} R.C. 2913.01(K)(1) states:
{¶ 44} "Theft offense" means any of the following:
{¶ 45} "(1) A violation of section 2911.01, 2911.02, 2911.11,2911.12, 2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04,2913.041, 2913.05, 2913.06, 2913.11, 2913.21, 2913.31, 2913.32,2913.33, 2913.34, 2913.40, 2913.42, 2913.43, 2913.44, 2913.45,2913.47, former section 2913.47 or 2913.48, or section 2913.51,2915.05, or 2921.41 of the Revised Code."
{¶ 46} R.C. 2913.02 (1), (2), (3) state:
{¶ 47} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
{¶ 48} "(1) Without the consent of the owner or person authorized to give consent;
{¶ 49} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
{¶ 50} "(3) By deception;"
{¶ 51} R.C. 2913.11 states:
{¶ 52} "(A) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored.
{¶ 53} "(B) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
{¶ 54} "(1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;
{¶ 55} "(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, [SIC] or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.
{¶ 56} "(C) For purposes of this section, a person who issues or transfers a check, bill of exchange, or other draft is presumed to have the purpose to defraud if the drawer fails to comply with section 1349.16 of the Revised Code by doing any of the following when opening a checking account intended for personal, family, or household purposes at a financial institution."
{¶ 57} We agree with Judge Brown in his well-reasoned opinion that the doctrine of entrustment under the U.C.C. as codified in R.C. 1302.44(B) is inapplicable as RR was not a merchant and Davis was not a buyer in the ordinary course of business. See Judge Reader's analysis in Textron Financial Corp. v. MedinaReady-Mix, Inc., (Apr. 7, 1995), Fifth Dist. App. No. 94CA40.
{¶ 58} However, in arriving at his decision, the trial court drew certain conclusions with which we disagree.
{¶ 59} A conclusion reached was that RR placed the events in motion by not withdrawing from the sale after concern over the delay in appearance of Ms. Davis and not noticing the misspelling of "forty" on the purported cashier's check. The effect of these actions is disputed and are material facts. Also, the question remains as to whether L.A. Trading or Manheim, in the ordinary accepted course of auto business sales, rather than R R, created the course of action by not checking the Secretary of State's data base or the National Crime Information Center Database ("NCIC") which were available to them according to affidavit. Florida apparently did check such database and refused to issue a title to the Bernesees. See the quoted discussion on Page 12 contained in Lyons v. Superior Dodge, Inc. (July 11, 1986), Second Dist. App. No. 1154, as to a transfer of possession and title in receipt of a worthless check.
{¶ 60} Also, the court concluded that the vehicle was not stolen as the title was executed and delivered to Davis in exchange for the fraudulent check.
{¶ 61} The provisions of R.C. 2913.31 (A)(1)(2)(3), which are included as "theft offenses" under R.C. 2913.01, state:
{¶ 62} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
{¶ 63} "(1) Forge any writing of another without the other person's authority;
{¶ 64} "(2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
{¶ 65} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
{¶ 66} We therefore find that, contrary to the trial court's opinion, the vehicle in question, as a matter of law, under the stipulated controlling Ohio law, was a stolen vehicle when its possession and title passed from RR to Ms. Davis in exchange for the counterfeit check.
{¶ 67} Next, we must address the court's reliance on PolandChevrolet Co. v. Shelly Smith Sons (1969), 21 Ohio Misc. 30, and differentiating Hardware Mut. v. Gall (1968),15 Ohio St.2d 261. The Poland case relied on Atlantic Finance Co. vs.Fisher (1962), 173 Ohio St. 397 and stated incorrectly that such case was dated September 18, 1968, and was the latest Ohio Supreme Court pronouncement on the issue. Such case was actually issued May 23, 1962, and that of Hardware Mut. v. Gall (Gall) in 1969. We find that the latter is controlling law on the subject but does not necessarily resolve the material factual matters in dispute nor does such case necessarily prevent a conclusion such as the court reached favoring title in Loudon.
{¶ 68} Gall, supra, stated:
{¶ 69} "Thief could not convey valid title to stolen motor vehicle to bona fide purchaser for value without notice, although certificate of title used in purported transfer appeared valid on its face; overruling Commercial Credit Corp. v. Pottmeyer(1964), 176 Ohio St. 1, 197 N.E.2d 343. R.C. §§ 1307.04,4505.07, 4505.17".
{¶ 70} "Under the provisions of the Ohio Certificate of Motor Vehicle Title Act, absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, although the certificate of title used in the purported transfer appears valid on its face. (Paragraph three of the syllabus of Atlantic Finance Co. v. Fisher (1962),173 Ohio St. 387, 183 N.E.2d 135, approved and followed. Paragraphs three and four of the syllabus of Commercial Credit Corp. v. Pottmeyer(1964), 176 Ohio St. 1, 197 N.E.2d 343, overruled.)
{¶ 71} "It will be noted here that in neither of the cases now before us has the bona fide purchaser raised any question of the owner's negligence or claimed that the latter's conduct with respect to the automobile while in his possession should estop him from asserting his rights." Id.
{¶ 72} The question, even under Gall, supra, is whether the actions of RR estop it from maintaining that it, rather than Loudon, possesses good title at present.
{¶ 73} An interesting consideration was made by the Second District Court of Appeals in Lyons Motors, Inc. V. SuperiorDodge, Inc. (July 11, 1986), Second Dist. App. No. 1154.
{¶ 74} "Initially, we note that there is no question but that appellant is a bona fide purchaser for value without notice. Secondly, we find that the trial court properly deemed Rowe to be a `thief' and the vehicle to be `stolen', see R.C. 2913.02(A)(3) and 2913.01(A). As to whether appellee is estopped to seek replevin, the trial court found that `Lyons was eager to sell the car and transferred the certificate of title without waiting for Rowe's check to clear. This was not a sound business practice but does not rise to the level of an act which requires estoppel of Lyons' right to possession of the Datsun. Although Lyons set into motion the events which subsequently led to its loss, it is protected under Ohio law by reason of the deception of Rowe.' Appellant argues that `[w]hen one of two innocent persons must suffer from the fraud of a third, the one who made it possible for the fraud to be perpetrated must bear the loss.' Gall,
supra, at 267. This would clearly be appellee as it was its action in endorsing the title to Rowe and placing the car in Rowe's possession that enabled Rowe to defraud appellant. InCommercial Credit Corp. v. Pottmeyer, supra the court held that there is no reason to distinguish between the loss caused by swindle as opposed to a theft. We believe this proposition survives the partial overruling of that case. The policy of protecting the original owner is the same. This view has been followed by other courts. See, e.g., State Farm Mut. Ins. Co. v.Valentine (1972), 29 Ohio App.2d 174, G.M.A.C. v. Birkett L.Williams Co. (1969), 17 Ohio Misc. 219.
{¶ 75} The common law doctrine of equitable estoppel, if it would apply in this case, is described by the court of appeals inPate v. Elliot (1978), 61 Ohio App.2d 144, 146-147, 15 O.O.3d 275, 400 N.E.2d 910, as follows: [Ogden v. Ogden (1854),4 Ohio St. 182, 195] merely states a basic tenet of American property law: a purchaser of property acquires only as sound a title as was held by the seller. Because a thief has void title, anyone possessing superior rights to the property may recover possession from the thief or a subsequent purchaser. This rule has its limitations, however. If the owner of property purposely clothes another with the appearance of ownership, equity requires that the owner be estopped from asserting title as against a subsequent bona fide purchaser. * * *"
{¶ 76} We therefore sustain the First Assignment of Error but do not determine the ultimate ownership as the material facts in dispute have yet to be resolved.
{¶ 77} We therefore determine that the Ohio Certificate of Title Act rather than the Uniform Commercial Code is controlling as to ownership of a motor vehicle subject, at least, to the possibility of the application of estoppel. Also, that the title to Davis was void, not voidable. Therefore, the First Assignment is sustained.
{¶ 78} Since we have determined that the vehicle was stolen, the Second Assignment is also sustained. In addition, as stated, there are material facts in dispute requiring this Court to sustain the Third Assignment of Error.
{¶ 79} While we find the actions of Mr. Loudon in not cooperating with the Secret Service troubling, we do not disagree with the court's conclusions as to the Fourth Assignment, even though on a different basis, as the materials before the court would justify a finding of the lack in Mr. Loudon of a sufficient belief as to a theft having occurred when reacquiring title. Even the court's thorough analysis resulted in this conclusion.
{¶ 80} The Fourth Assignment is denied.
{¶ 81} This cause is therefore reversed and remanded for further proceedings in accordance herewith.
Gwin, P.J., and Edwards, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, is reversed and remanded. Costs to be proportioned among the parties.