ALLAN NOTT ENTERPRISES, INC., APPELLANT, v. NICHOLAS STARR
AUTO, L.L.C., D.B.A. 1ST CHOICE AUTO, APPELLEE.

[Cite as *Allan Nott Ents., Inc. v. Nicholas Starr Auto,
L.L.C.,* 110 Ohio St.3d 112, 2006-Ohio-3819.]

(No. 2005–0756—Submitted February 7, 2006—Decided August 9, 2006.)

LUNDBERG STRATTON, J.

## I.   Introduction

{¶ 1} In this case, a thief acquired a motor vehicle by using a counterfeit check and then sold the vehicle.  The underlying legal issue we must answer is whether the wrongdoer can pass a valid title to that vehicle to a good-faith purchaser for value.  The court of appeals held that because using a counterfeit check to acquire the vehicle was a "transaction of purchase" under R.C. 1302.44, the wrongdoer was able to pass valid title to a good-faith purchaser for value.  We reverse and hold that under R.C. Chapter 4505, Ohio's Certificate of Motor Vehicle Title Act, and *Hardware Mut. Cas. Co. v. Gall* (1968), 15 Ohio St.2d 261, 44 O.O.2d 448, 240 N.E.2d 502, the vehicle was stolen, and a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, even when the certificate of title used in the purported transfer appears valid on its face.

## II.   Facts

{¶ 2} Edward L. Raifsnider provided John and Debra Stone with a check to purchase the Stones' Honda Accord.  In exchange, the Stones assigned the Missouri title to the Accord to Raifsnider.

{¶ 3} Raifsnider transferred title on the Accord in Ohio, obtaining an Ohio certificate of title.  The bank on which Raifsnider's check had purportedly been drawn contacted the Stones and informed them that the check was counterfeit.  The Stones reported the incident to Missouri police, who located the Accord in Ohio and contacted Columbus police and the Ohio Bureau of Motor Vehicles ("OBMV").

{¶ 4} In the meantime, Raifsnider sold the Accord to appellee, Nicholas Starr Auto, d.b.a. 1st Choice Auto ("Starr Auto").  Starr Auto then sold the Accord to appellant, Allan Nott Enterprises, Inc. ("Nott").  Nott in turn sold the Accord to a customer, Bradie Rice. There is no contention that either Nott or Starr Auto purchased the Accord in bad faith.

{¶ 5} After the Ohio Registrar of Motor Vehicles determined that the Accord was stolen, pursuant to R.C. 4505.17, he cancelled the titles, and Nott returned the Accord to the Stones.  Nott voluntarily provided Rice with a replacement vehicle and requested Starr Auto to reimburse it for the cost of the Accord.  Starr Auto refused, and Nott filed suit against Starr Auto seeking to recover the cost of the Accord.

{¶ 6} The trial court granted summary judgment to Starr Auto, finding that Raifsnider was able to pass valid title to the Accord to Starr Auto, which in turn sold the Accord to Nott. The court found that Raifsnider had taken possession of the Accord as part of a "transaction of purchase" within the meaning of R.C.

1302.44(A). Thus, Starr Auto could not be held liable for the sale, and Nott's complaint against Starr Auto was dismissed.

{¶ 7} On appeal, Nott argued that Raifsnider was a thief and, therefore, could not pass valid title of the Accord to Starr Auto, citing *Hardware Mut. Cas. Co. v. Gall*, 15 Ohio St.2d 261, 44 O.O.2d 448, 240 N.E.2d 502.

{¶ 8} However, the court of appeals found that *Gall* did not apply in this case, stating:

{¶ 9} "After reading *Gall*, we conclude that case stands for the proposition that when a car is *stolen*, i.e. no transaction of purchase is present, '[under] the provisions of the Ohio Certificate of Motor Vehicle Title Act, absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice.' Id. at paragraph three of the syllabus.

{¶ 10} "The motor vehicles in Gall were *stolen* from their owners; however, in the instant case, the motor vehicle was obtained by a transaction of purchase between the Stones and Raifsnider. Accordingly, the events of this case fall squarely within R.C. 1302.44(A) and not within the holding enunciated in *Gall*." (Emphasis sic.) 2005-Ohio-1419, 2005 WL 696839, fn. 1.

{¶ 11} The court of appeals concluded that because Raifsnider acquired the Accord from the Stones pursuant to a "transaction of purchase" under R.C. 1302.44, he acquired voidable title to the Accord. Id. at ¶ 11. The court of appeals further determined that because Starr Auto was a bona fide purchaser for value without notice, it acquired valid title from Raifsnider. Id. Similarly, it determined that Nott was also a good-faith purchaser for value without notice, and therefore Nott acquired valid title from Starr Auto. Id. Thus, the court of appeals affirmed the judgment of the trial court, finding that Nott could not recover the purchase price from Starr Auto, because under R.C. 1302.44, Starr Auto had valid title and was not liable to Nott for the sale.

{¶ 12} This cause is now before this court pursuant to the acceptance of Nott's discretionary appeal.

### III. Analysis

{¶ 13} We begin by briefly comparing R.C. 1302.44, which contains the "voidable title" doctrine applied by the court of appeals, to R.C. 4505.04 and 4505.17 of Ohio's Certificate of Motor Vehicle Title Act.

{¶ 14} Under R.C. 1302.44, an individual with voidable title may pass title by a "transaction of purchase" to a good-faith purchaser for value even though the

goods were procured though fraud or via a check that was later dishonored.[1] The Revised Code does not define "transaction of purchase."

{¶ 15} R.C. 4505.04 provides that a person must possess a certificate of title to claim ownership of a motor vehicle.[2] R.C. 4505.17 provides that upon determining that a vehicle is stolen, the Registrar of Motor Vehicles must cancel any certificate of title to that vehicle "if, upon investigation, it appears that such certificate of title was improperly issued." [3]

---

1. {¶ a} R.C. 1302.44(A) provides:

{¶ b} "A purchaser of goods acquires all title which the transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. *A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though* :

{¶ c} "(1) The transferor was deceived as to the identity of the purchaser, or

{¶ d} "(2) The delivery was in exchange for a *check* which is later *dishonored*, or

{¶ e} "(3) It was agreed that the transaction was to be a 'cash sale,' or

{¶ f} "(4) The *delivery was procured through fraud punishable as larcenous under the criminal law*." (Emphasis added.)

2. {¶ a} R.C. 4505.04 provides:

{¶ b} "(A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

{¶ c} "(B) Subject to division (C) of this section, *no court shall recognize* the right, title, *claim,* or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, *unless evidenced* :

{¶ d} "(1) *By a certificate of title,* an assignment of a certificate of title made under section 4505.032 of the Revised Code, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Revised Code;

{¶ e} "(2) By admission in the pleadings or stipulation of the parties;

{¶ f} "(3) In an action by a secured party to enforce a security interest perfected under Chapter 1309. of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest." (Emphasis added.)

3. {¶ a} R.C. 4505.17 provides:

{¶ b} "(A) Every sheriff, chief of police, constable, state highway patrol trooper, employee of the state highway patrol, and designated officer of the department of public safety, having knowledge of a stolen motor vehicle, immediately shall furnish the registrar of motor vehicles with full information concerning such theft.

{¶ c} "Whenever the registrar receives a report of the theft or conversion of a motor vehicle, whether the same has been registered or not and whether owned in this or any other state, the registrar shall make a distinctive record thereof, including the make of the stolen vehicle and its manufacturer's vehicle identification number. The registrar shall prepare a report listing motor

## A. Ohio's Certificate of Motor Vehicle Title Act, R.C. Chapter 4505

{¶ 16} "Ohio's Certificate of Motor Vehicle Title Act grants a unique status to an individual who has in his possession a certificate of origin." *Executive Coach Builders v. Bush Cook Leasing, Inc.* (1992), 81 Ohio App.3d 808, 612 N.E.2d 408, citing *Fuqua Homes, Inc. v. Evanston Bldg. Loan Co.* (1977), 52 Ohio App.2d 399, 6 O.O.3d 440, 370 N.E.2d 780. Yet "the rights it creates in a holder of such a certificate are not absolute and the holder does not prevail against all the world under any and all circumstances." Id., citing *Fuqua Homes*, 52 Ohio App.2d at 402, 6 O.O.3d 440, 370 N.E.2d 780. *Gall* defines an exception to the rule that the holder of a title will prevail against others who claim ownership of a vehicle. *Gall* holds that absent a claim of estoppel by the vehicle's owner, a thief cannot pass valid title of a stolen vehicle to even a good-faith purchaser for value. *Gall*, 15 Ohio St.2d 261, 44 O.O.2d 448, 240 N.E.2d 502, at paragraph three of the syllabus.

{¶ 17} The court of appeals in this case held that within the meaning of *Gall*, "stolen vehicle" means only those vehicles that are physically stolen from the owner by force or stealth. In order to better explain why *Gall*'s use of the phrase "stolen vehicle" also includes vehicles stolen by fraud or deception, we review this court's history of interpreting Ohio's Certificate of Motor Vehicle Title Act.

{¶ 18} We begin with *Atlantic Fin. Co. v. Fisher* (1962), 173 Ohio St. 387, 19 O.O.2d 384, 183 N.E.2d 135, in which a thief stole a motor vehicle located and titled in Illinois. Atlantic Finance Company was the holder of the first lien on the stolen vehicle.

{¶ 19} The thief fraudulently acquired an Ohio title to the stolen motor vehicle, which indicated that the vehicle was free of any liens. The thief then sold the vehicle to Fisher, a bona fide Ohio purchaser for value without notice.

{¶ 20} When the original owner defaulted, Atlantic Finance filed a replevin action against Fisher, relying on the Illinois title. The trial court ordered Fisher to return the vehicle to Atlantic Finance, but the court of appeals reversed.

---

vehicles stolen and recovered as disclosed by the reports submitted to the registrar, to be distributed as the registrar determines advisable.

{¶ d} "In the event of the receipt from any clerk of the court of common pleas of a copy of a certificate of title to such a motor vehicle, the registrar immediately shall notify the rightful owner thereof and the clerk who issued such certificate of title, and if, upon investigation, it appears that such certificate of title was improperly issued, the registrar immediately shall cancel the certificate.

{¶ e} "In the event of the recovery of a stolen or converted motor vehicle, the owner immediately shall notify the registrar, who shall remove the record of the theft or conversion from the registrar's file.

{¶ f} "(B) Whoever violates this section shall be fined not more than two hundred dollars, imprisoned not more than ninety days, or both."

{¶ 21} This court reversed the judgment of the court of appeals and held that admitting the Illinois title to prove ownership of the vehicle promoted an express purpose of the Certificate of Title Act, i.e., preventing the importation of stolen motor vehicles. *Fisher*, 173 Ohio St. at 390, 19 O.O.2d 384, 183 N.E.2d 135.

{¶ 22} *Fisher* also recognized that the Certificate of Title Act requires that ownership of a vehicle must be evidenced by a title. Id., citing R.C. 4505.04. However, the court also stated that "the certificate contemplated by this section must be one which is *valid at its inception*." (Emphasis added.) Id. *Fisher* reasoned that "[i]t is well settled that a thief can not pass title to a stolen chattel, and a bona fide purchaser for value without notice from a thief obtains no better title than the thief." Id. at 391, 19 O.O.2d 384, 183 N.E.2d 135. Thus, *Fisher* held that "[u]nder the provisions of the Ohio Certificate of Motor Vehicle Title Act, a thief can not convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, although the certificate of title used in the purported transfer appears valid on its face." Id. at paragraph three of the syllabus.

{¶ 23} Applying this principle, the court held that pursuant to its Illinois title, Atlantic Finance retained valid title to the vehicle, and, therefore, Atlantic Finance was entitled to recover the vehicle from Fisher.

{¶ 24} However, *Fisher* was followed by *Commercial Credit Corp. v. Pottmeyer* (1964), 176 Ohio St. 1, 26 O.O.2d 286, 197 N.E.2d 343. In *Pottmeyer*, Betty Williams purchased a vehicle pursuant to a conditional contract. The contract was assigned to Commercial Credit Corporation ("CCC"), which held a lien on the vehicle. Williams obtained a West Virginia title naming Hess Buick ("Hess") as the title holder. The certificate reflected Hess's false statement that it had received title directly from the manufacturer. Furthermore, CCC's lien was not noted on the certificate. Hess sold the vehicle to Pottmeyer Auto Sales, an Ohio car dealer. Using the West Virginia certificate of title, Pottmeyer acquired an Ohio title that also failed to reflect any liens.

{¶ 25} CCC filed a replevin action against Pottmeyer. The trial court ordered Pottmeyer to return the car to CCC. The court of appeals affirmed.

{¶ 26} Reversing the judgment of the court of appeals, this court overruled *Fisher* and held that "[o]ne who claims a right, title or interest in or to a motor vehicle but whose claim is not noted upon any Ohio certificate of title cannot prevail in an action in replevin against a purchaser in Ohio of such motor vehicle, who acquired possession in Ohio of such vehicle together with an apparently valid Ohio certificate of title therefor in good faith and without notice of any right, title or interest in such vehicle not set forth in his certificate of title." *Pottmeyer*, 176 Ohio St. 1, 26 O.O.2d 286, 197 N.E.2d 343, at paragraph three of the syllabus. The court reasoned that a principal purpose of the Certificate of Title Act was to

protect Ohio *bona fide purchasers.* Id. at 11, 26 O.O.2d 286, 197 N.E.2d 343. The court also found that "the clear words of the Certificate of Title Act impart negotiability to an automobile in the possession of one having an Ohio certificate of title showing him as the owner." Id. at 10, 26 O.O.2d 286, 197 N.E.2d 343.

{¶ 27} Thus, the court held that because Pottmeyer was a bona fide purchaser for value without notice and possessed an apparently valid Ohio title, he was the owner of the vehicle.

{¶ 28} Four years later, this court again examined the Certificate of Title Act in *Hardware Mut. Cas. Co. v. Gall,* 15 Ohio St.2d 261, 44 O.O.2d 448, 240 N.E.2d 502. *Gall* involved two cases. In the first case, a thief stole a vehicle located and titled in Michigan. The thief sold the vehicle to Arthur Gall, a bona fide purchaser, who acquired an Ohio title. The original owner's insurer, Hardware Mutual, paid the owner for its loss, acquired both a Michigan and an Ohio certificate of title, and filed suit to recover the vehicle from Gall. The court denied Hardware Mutual relief, but the court of appeals reversed, granting Hardware Mutual ownership of the vehicle.

{¶ 29} In the second case, a thief stole a vehicle. Thereafter, another individual obtained a Michigan title and sold the vehicle to the Cashner Brothers in Ohio, a bona fide purchaser for value without notice. That company acquired an Ohio title and sold the vehicle to a customer, who in turn acquired an Ohio title.

{¶ 30} Republic–Franklin Insurance Company ("Republic"), the original owner's insurer, held the Michigan title to the stolen vehicle, having paid the owner for his loss. Republic acquired an Ohio title and then filed an action for conversion against Cashner Brothers and its customer. The trial court ruled for the defendants. The court of appeals affirmed, relying on *Pottmeyer,* 176 Ohio St. 1, 26 O.O.2d 286, 197 N.E.2d 343. Finding its decision in conflict with the first case, the court of appeals in *Cashner* certified the record to this court.

{¶ 31} This court's decision in *Gall* overruled *Pottmeyer* in part and distinguished it in part. The court in *Gall* stated: "Before we confront once more the principal issue at bar, we apparently must again dispel the erroneous notion that whoever first obtains an apparently valid Ohio certificate of title will be entitled to retain possession of the automobile regardless of whether he is the real owner or a bona fide purchaser without notice, whose title derives from a thief." 15 Ohio St.2d at 264, 44 O.O.2d 448, 240 N.E.2d 502. The court noted that the origin of this erroneous proposition was *Pottmeyer.* Thus, the court in *Gall* overruled paragraphs three and four of the syllabus in *Pottmeyer* and held that "[u]nder the provisions of the Ohio Certificate of Motor Vehicle Title Act, absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice,

although the certificate of title used in the purported transfer appears valid on its face." *Gall,* paragraph three of the syllabus. In other words, under *Gall,* the original owner prevails over a good-faith purchaser who purchases from the thief.

{¶ 32} Repudiating *Pottmeyer, Gall* found that the Certificate of Title Act contains no words of negotiability. Id. at 266, 44 O.O.2d 448, 240 N.E.2d 502. *Gall* also recognized that under R.C. 4505.17, when the registrar receives a copy of a certificate of title to a stolen vehicle that appears to have been improperly issued, the registrar must cancel the title. This requirement indicates the legislature's intent to protect the true owner against subsequent purchasers. Id. at 267–268, 44 O.O.2d 448, 240 N.E.2d 502.

{¶ 33} *Gall* also distinguished *Pottmeyer:* "[W]e are concerned here not with a theft of the certificate, but of the vehicle which it represents. [*Pottmeyer*], therefore, must be limited to its facts." *Gall,* 15 Ohio St.2d at 266–267, 44 O.O.2d 448, 240 N.E.2d 502. We believe that the court of appeals in the instant case relied on this language in holding that *Gall* applies only to physical thefts of automobiles and not to thefts by fraud or deception. We disagree with that interpretation.

## B. Purpose of the Certificate of Motor Vehicle Title Act

{¶ 34} Although *Gall* factually distinguished itself from *Pottmeyer,* it provided no express instruction that cases involving theft by fraud should be treated any differently than those involving physical theft. We have recognized that the purpose of Ohio's Certificate of Title Act is " '[t]o *prevent* the importation of stolen motor vehicles and *thefts* and *frauds* in the *transfer of title* to motor vehicles.' " (Emphasis added.) *Kelley Kar Co. v. Finkler* (1951), 155 Ohio St. 541, 545, 44 O.O. 494, 99 N.E.2d 665, quoting the title of 1937 Am.Sub.H.B. No. 514, enacting Ohio's first Certificate of Motor Vehicle Title Act, 117 Ohio Laws 373. To hold that *Gall* applies to physical thefts only would permit a thief to pass title of a vehicle stolen by fraud, which subverts the purpose of the Act.

## C. The Registrar Must Cancel Title to a Stolen Motor Vehicle

{¶ 35} As *Gall* recognized, R.C. 4505.17(A) requires the registrar to make a record of any "stolen" or converted vehicle and to cancel any copy of a certificate of title to that vehicle. *Gall,* 15 Ohio St.2d at 268, 44 O.O.2d 448, 240 N.E.2d 502. R.C. 4505.17 does not define "stolen." Black's Law Dictionary (8th Ed.2004) defines "steal" as "[t]o take (personal property) illegally with the intent to keep it unlawfully" and "[t]o take (something) by larceny, embezzlement, or false pretenses." Id. at 1453. Thus, according to its common usage, "stolen" in R.C. 4505.17 contemplates all types of theft, irrespective of the method employed to accomplish the crime. Even if we were to construe "stolen" as having "acquired

a technical or particular meaning," our interpretation would not change. The criminal offense of theft includes theft by deception. R.C. 2913.02(A)(3).

{¶ 36} Furthermore, R.C. 4505.17(A) requires the registrar to cancel title to any converted vehicle. Conversion is "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172.

{¶ 37} Thus, we find that the registrar has broad authority to cancel an "improperly issued" title, i.e., where the vehicle is stolen or converted from its true owner, which bolsters our interpretation that a thief cannot pass valid title to even a good-faith purchaser and that *Gall* applies to physical thefts as well as to thefts by fraud or deception.

{¶ 38} Accordingly, we hold that under *Gall* "stolen vehicle" includes those vehicles stolen by fraud or deception. See *Loudon Motors, Inc. v. United Fire & Cas. Co.*, Stark App. Nos. 2003–CA–00220 and 2003–CA–00234, 2004-Ohio-2228, 2004 WL 943860.

D. R.C. 1302.44

{¶ 39} However, our analysis is not at an end. As the court of appeals recognized, Raifsnider's acquisition of the Accord using a counterfeit check could qualify as a "transaction of purchase" within the meaning of R.C. 1302.44(A), the "voidable title" statute. Under the voidable-title doctrine, an individual who procures goods by larcenous conduct acquires a voidable title to the goods and therefore may pass valid title to those goods in a "transaction of purchase" to a bona fide purchaser for value without notice. R.C. 1302.44(A)(4). Title in the thief is voidable "because the true owner is entitled to rescind the transaction and recover the goods from that individual. The right of rescission is cut off, however, by a transaction to a good faith purchaser." *Creggin Group, Ltd. v. Crown Diversified Industries Corp.* (1996), 113 Ohio App.3d 853, 859, 682 N.E.2d 692. Thus, once title to the goods has passed to the good-faith purchaser by a transaction of purchase, the original owner has no recourse to recover said goods. Id. This conflicts with *Gall* to the extent that *Gall* holds that a thief cannot pass title to a stolen vehicle and, absent an act of estoppel by the vehicle's owner, the owner retains valid title to that vehicle even where the thief sold the vehicle to a good-faith purchaser.

{¶ 40} Where statutes conflict, the more specific provision controls over the more general provision. R.C. 1.51. R.C. 1302.44 applies to goods. But R.C. 4505.04 applies to motor vehicles only. Therefore, we hold that when an individual acquires a motor vehicle using a counterfeit check and sells the vehicle to a purchaser, R.C. 4505.04 defines who possesses valid title to the motor vehicle.

See *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513, 751 N.E.2d 1019 (In determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over R.C. Chapter 1302).

## IV. Conclusion

{¶ 41} In summary, we reaffirm our holding in *Gall* that a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, even if the certificate used in the purported transfer appears valid on its face. We further hold that for purposes of the Certificate of Title Act, "stolen motor vehicle" includes motor vehicles that are stolen by fraud or deception.

{¶ 42} Applying our holding, we find that Raifsnider's use of the counterfeit check to acquire the Accord was a theft and that the Accord was a stolen vehicle. Therefore, Raifsnider could not pass title to Starr Auto. We find no allegations that the Stones acted in a manner that would estop them from retaining valid title to the Accord.[4] Consequently, the Stones retained ownership of the Accord. Because valid title to the Accord remained with the Stones, Nott's complaint seeking to recover the purchase price of the Accord from Starr Auto has merit. Although it will likely prove fruitless, Starr Auto's recourse, were it to pursue one, is against Raifsnider. Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., RESNICK, PFEIFER, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Siferd McCluskey, L.P.A., Richard E. Siferd, and N. Shannon Bartels, for appellant.

Cory, Meredith, Witter, Rumer Cheney, L.P.A., and Victoria U. Maisch, for appellee.

---

4. Starr Auto did not file a merit brief and did not participate in oral argument.