[Cite as *Sparks v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-7039.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

BRYAN SPARKS

 Plaintiff

 v.

OHIO DEPT. OF REHABILITATION AND CORRECTION

 Defendant

Case No. 2011-01801

Judge Joseph T. Clark
Magistrate Robert Van Schoyck

## MAGISTRATE DECISION

{¶1} Pursuant to Civ.R. 53, Magistrate Robert Van Schoyck was appointed to conduct all proceedings necessary for decision in this matter.

{¶2} Plaintiff brought this action for conversion, alleging that defendant wrongfully destroyed his personal property. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶3} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Marion Correctional Institution (MCI) pursuant to R.C. 5120.16. Plaintiff testified that on the morning of February 23, 2010, a deputy sheriff arrived at MCI to transport him to Summit County, where he was scheduled to make a court appearance. Plaintiff stated that Corrections Officer (CO) Bentley woke him when the deputy arrived, informed him that he needed to pack his personal property in his prison-issued footlocker for storage while he was away, and that any personal property that would not fit in the footlocker could be left with plaintiff's cellmate. Plaintiff stated that he was unable to fit everything in the footlocker, so he left the excess property in his cell

and presented the footlocker to CO Bentley.  Bentley completed an inventory form to document the property in the footlocker, and plaintiff's signature appears beneath the following language:  "I certify that the above listed items are a complete and accurate inventory of all my personal property."  (Defendant's Exhibit C.)

{¶4} When plaintiff returned to MCI on or about March 18, 2010, the footlocker and its contents were returned to him, but he was instructed to meet with Sergeant Wendi Griffith regarding the property that he left in the cell.  According to plaintiff, Griffith advised him that such property had been seized as contraband inasmuch as it exceeded the amount of personal property that inmates can possess.  Plaintiff stated that Griffith informed him that he could mail such property out of the institution, and that any property not mailed out would be destroyed.  Plaintiff testified that Griffith then gave him a form upon which he was to designate whether the property would be mailed or destroyed, but he related that Griffith "snatched" the form away from him before he could read it, and then wrote on the form that he refused to sign.  (Defendant's Exhibit B.)  According to plaintiff, he would have signed the form and mailed the property away if he had been given time to read the form.

{¶5} Plaintiff testified that he subsequently made numerous inquiries and complaints to other staff members about the disposition of his property, and he stated that some of these staff members told him the property would be returned.  However, plaintiff related that the property was ultimately destroyed.  According to plaintiff, the property that he left in the cell when he departed MCI on February 23, 2010, included various hygiene and personal items worth $121.45, and legal documents worth $4,700; plaintiff explained that the legal documents were articles of incorporation that he was preparing to file with the state of Michigan.

{¶6} Sergeant Griffith testified that she was the supervising officer assigned to plaintiff's housing unit.  According to Griffith, an inmate who leaves MCI for a court appearance is required to bring all of his personal property to a CO and then pack the

property in his footlocker, which measures 2.4 cubic feet. Griffith stated that any property in excess of the 2.4-cubic foot limit, as well as any property that an inmate leaves with his cellmate, is deemed contraband pursuant to institutional rules. Griffith explained that inmates may also store legal materials in separate footlockers that are kept in an office, and she stated that plaintiff stored legal papers in this manner. Griffith related that CO Bentley, who gave plaintiff the order to pack up his property, supervises pack-ups for departing inmates on a daily basis.

{¶7} Griffith testified that plaintiff had already left MCI when she arrived for her shift at 11:00 a.m. on March 23, 2010, and that around 2:00 p.m. that day, plaintiff's cellmate apprised her of the property that plaintiff left in the cell. Griffith stated that she visited the cell, inspected the items, and instructed a CO to bring the items to the property vault and to write a conduct report for plaintiff. (Defendant's Exhibit A.) Griffith testified that the confiscated property included only a portion of the items described in plaintiff's complaint, that there were no papers other than a Bible and a drawing of a house, and that the total value of the property was less than $100.

{¶8} According to Griffith, when plaintiff returned to MCI on March 18, 2010, she summoned him to her office, held a hearing on the conduct report, found him guilty of both possessing contraband and possessing several items for which he could not prove ownership, informed him that any items he had proven ownership of could be mailed away, and explained to him that any items not mailed away would be destroyed. Griffith testified that plaintiff initially wished to mail the property, but that after reading the associated form he became upset, said he could not afford the mailing expenses, and refused to sign. Griffith wrote on the form that plaintiff refused to sign, which meant that the property would be destroyed. (Defendant's Exhibit B.)

{¶9} Griffith testified that the property was "minor" contraband worth not more than $100, which could thus be destroyed without a forfeiture order. However, Griffith testified that about one month later, Lieutenant Jason Michel, who managed the property vault, informed her that the property had yet to be destroyed and asked her

what to do with it.  Griffith testified that some delay or confusion may have resulted from the paperwork that reflected plaintiff's initial desire to mail the property out, and his subsequent refusal to sign the form.  (Defendant's Exhibit B.)  In any event, Griffith stated that since the property had not been disposed of in the normal course, she consulted with Deputy Warden Jason Bunting and another supervisor to confirm that it should still be destroyed, and she thereafter arranged for its destruction.

{¶10} Lieutenant Michel testified that at all times relevant, he was the contraband supervisor, in which capacity he managed the property vault.  Michel stated that plaintiff visited him at the property vault and sent him an institutional "kite" on which he replied by writing, in part, that "your items will be returned this week."  (Plaintiff's Exhibit 1.)  However, Michel stated that he had no authority over the disposition of inmate property, which was the responsibility of sergeants.  Michel explained that his response to plaintiff's kite meant only that plaintiff could recover any items that a sergeant had determined he was eligible to recover.

{¶11} Acting Warden Jason Bunting, who was a deputy warden at all times relevant, testified that plaintiff was properly cited for possession of contraband inasmuch as his personal property did not fit into his footlocker.  Bunting stated that, in general, an inmate's excess property is destroyed if he declines to mail it outside the institution.  According to Bunting, plaintiff approached him multiple times to inquire about the property in question, but he told plaintiff that he would receive only such property as he was deemed entitled to possess.

{¶12} Captain Robert Morgan testified that when plaintiff approached him and inquired about the status of the property in question, he agreed to look into the matter, but informed plaintiff that he could not retrieve any property deemed contraband.  Morgan further testified that when he visited the property vault and asked Michel about the matter, he learned that the property had already been released for destruction.

**{¶13}** "Conversion is 'the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'" *Allan Nott Ent., Inc. v. Nicholas Starr Auto, L.L.C.*, 110 Ohio St.3d 112, 2006-Ohio-3819, ¶36, quoting *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96.

**{¶14}** "[Defendant] does not have the liability of an insurer (i.e., is not liable without fault) with respect to inmate property, but it does have the duty to make reasonable attempts to protect such property. * * * When prison authorities obtain possession of an inmate's property, a bailment relationship arises between the correctional facility and the inmate. * * * By virtue of this relationship, [defendant] must exercise ordinary care in handling and storing [inmate] property. * * * However, a correctional institution cannot be held liable for the loss of contraband property that an inmate has no right to possess." *Triplett v. S. Ohio Correctional Facility*, Franklin App. No. 06AP-1296, 2007-Ohio-2526, ¶7. (Internal citations omitted.)

**{¶15}** Upon review, the court finds that plaintiff possessed more than 2.4 cubic feet of personal property and left the excess property with his cellmate upon leaving MCI, thereby rendering such property contraband subject to confiscation under the MCI handbook and Ohio Adm.Code 5120-9-33. Although plaintiff testified that CO Bentley instructed him to leave the excess property with his cellmate, the court does not find this testimony to be credible.

**{¶16}** Plaintiff left the items in his cell at least seven hours before Griffith learned of the same, and the written inventory of items confiscated by Griffith includes only a portion of the items that plaintiff claims to have left behind. Plaintiff's cellmate, if not other inmates, had access to this property before the confiscation, and the court finds that plaintiff cannot recover for items that were lost during that period of time inasmuch as he failed to deliver such items into defendant's possession and failed to otherwise show that defendant assumed control over them. See *Lacey v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2005-07453-AD, 2008-Ohio-2636, ¶19. Further, Griffith testified

that the confiscated property included copper wire that plaintiff was prohibited from possessing, and he thus cannot recover for its loss. See *Triplett*, supra. Plaintiff is also unable to recover for the destruction of any property for which he failed to prove ownership at the March 18, 2010 hearing. See *Lacey*, supra, at ¶24.

{¶17} At the conclusion of that hearing, Griffith presented plaintiff with a choice to either mail away his remaining property or have it destroyed, and he was given a form on which to memoralize his designation and affix his signature. The court finds that plaintiff refused to complete the form, and that he instead elected to lobby various employees to simply return the property to him. Although plaintiff testified that he would have mailed the items if Griffith had given enough time to read the form, the court finds Griffith more persuasive in testifying that plaintiff was given ample time to read the form and that plaintiff understood his options. By refusing to mail away his property, plaintiff effectively abandoned such property and relinquished any rights of ownership. Id. at ¶25; *Reardon v. N. Cent. Correctional Institution*, Ct. of Cl. No. 2008-10960-AD, 2009-Ohio-4674, ¶12.

{¶18} For the foregoing reasons, the court finds that defendant exercised an appropriate degree of care toward plaintiff's personal property at all times, and that plaintiff has failed to prove his claim of conversion by a preponderance of the evidence. Accordingly, it is recommended that judgment be rendered in favor of defendant.

{¶19} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely*

*and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT C. VAN SCHOYCK
Magistrate

cc:

Emily M. Simmons                          Bryan Sparks, #463-981
Jeanna R. Volp                            Marion Correctional Institution
Assistant Attorneys General               P.O. Box 57
150 East Gay Street, 18th Floor           Marion, Ohio 43301-0057
Columbus, Ohio 43215-3130

RCV/dms
Filed December 29, 2011
To S.C. reporter March 20, 2012